IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERALD JOE FORD, ROYCE GRIGGS,
and TROY OMNESS,

       Plaintiffs,

and

THE VALLEY COMMUNITY
PRESERVATION COMMISSION,

       Intervenor-Plaintiff,

v.                                                            CIV. No. 01-520LH/LFG-ACE

RUEBEN THOMAS,
in his official capacity as New Mexico
Administrator of the Federal Highway
Administration, an agency of the United
States Department of Transportation,

       Defendant.

## MEMORANDUM OPINION AND ORDER

       **THIS MATTER** comes before the Court on Plaintiffs' Motion for Preliminary Injunction (Docket No. 11) and the Motion on Behalf of the Valley Community Preservation Commission for Preliminary Injunction (Docket No. 16). The Court, having held a hearing on these motions on October 30, 2001, having considered the oral arguments, briefs and evidence submitted by the parties as well as applicable case law, and being otherwise fully advised in the premises, concludes that these two motions are not well taken and shall be **denied**.

**I. Procedural Background**

In May 2001, Plaintiffs filed an action against Defendant Reuben Thomas, New Mexico Administrator of the Federal Highway Administration ("FHWA"), an agency of the United States Department of Transportation[1], for declaratory, mandatory and injunctive relief. In this lawsuit, Plaintiffs contend that since approximately 1980, the State of New Mexico and the FHWA have been planning to widen the 45 mile stretch of US70 between Roswell and Ruidoso Downs; that these entities always conceived this entire stretch of road as one continuous project; and, that in the year 2000, these entities illegally segmented the highway project into two pieces to assure the eventual construction of a four-lane highway in the Hondo River valley. (Complaint ¶¶ 2, 3 and 4). Plaintiffs allege that in February of 2001, the FHWA decided to proceed with the 17 mile Roswell to Riverside segment (the "plateau segment" or "plateau project") on the basis of an Environmental Assessment ("EA")(Def's Ex. 1) and Finding of No Significant Impact ("FONSI")(Defendant's Ex. 5), despite the fact that the FHWA had not yet completed its environmental analysis of the Riverside to Roswell segment (the "valley segment" or the "valley project"). No Environmental Impact Statement ("EIS") was prepared for the plateau segment.

Due to these actions, Plaintiffs allege that the FHWA violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*; the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f; Section 4(f) of the Department of Transportation Act ("Section 4(f)") 49 U.S.C. § 303(c); and the Administrative Procedures Act ("APA"), 5 U.S.C. § 552, *et seq.*. Specifically, Plaintiffs challenge and seek to halt construction of the "plateau project",

---

[1] Defendant Reuben Thomas, is sued in his official capacity. Throughout this Memorandum Opinion and Order, this Defendant will frequently be referred to generally as the FHWA.

which is currently underway.

**II. Applicable Standards**

    **A. Standards for Preliminary Injunction**

The traditional elements that a party must establish in order to obtain a preliminary injunction have been set out by the Tenth Circuit as follows:

    1. that the movant will suffer irreparable injury unless the injunction issues;
    2. the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
    3. that the injunction, if issued, would not be adverse to the public interest; and
    4. substantial likelihood that the movant will eventually prevail on the merits.

*Walmer v. U.S. Dept. of Defense,* 52 F.3d 851, 854 (10th Cir. 1995).[2] A preliminary injunction should be granted only under compelling circumstances inasmuch as it is an extraordinary remedy and the right of relief must be clear and unequivocal. *See Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 31 F.3d 1536, 1542 (10th Cir. 1994). Because it is an extraordinary remedy, it is the exception rather than the rule. *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). The plaintiff bears the burden of persuasion on all four factors in order to be entitled to the extraordinary relief of a preliminary injunction. In determining whether a preliminary injunction is warranted, a court must be guided by normal equitable principles and must weigh the practicalities of the situation. *Id*. at 677. The grant or denial of a preliminary injunction is a matter committed to the district court's discretion.

---

    [2]The Tenth Circuit has adopted a modified likelihood of success requirement. If the movant has satisfied the first three requirements for a preliminary injunction, the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation. Because movants have not satisfied the first three requirements in this case, the traditional standard applies. *See Walmer*, 52 F.3d at 854.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

### B. Standards for Judicial Review of the National Environmental Protection Act ("NEPA") Challenge to Agency Action Under the Administrative Procedure Act ("APA")

The APA provides that a court shall set aside agency action only if it is arbitrary, capricious, an abuse of discretion, or contrary to law. 5 U.S.C. § 706(2)(A). The decision of the Federal Highway Administration is entitled to a presumption of regularity, and the court shall not substitute its judgment for that of the agency. In *Associations Working for Aurora's Residential Environment v. Colorado Dept. of Transp.*, 153 F.3d 1122, 1131 (10th Cir. 1998), the Tenth Circuit stated that under this standard, the court must consider whether the agency's decision was based on a consideration of the relevant factors, and should invalidate the decision only when there has been a clear error in judgment.

### III. Likelihood of Success

To demonstrate a substantial likelihood of success, the movant is generally required to present a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. *See Autoskill, Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1486 (10th Cir. 1993).

### A. Count I – Illegal Segmentation Under NEPA

The primary focus of both motions before the Court is on whether or not Plaintiffs have a substantial likelihood of success on their claim that FHWA illegally segmented what Plaintiffs term as the "Roswell to Ruidoso Downs project." Count I of the Complaint alleges that

Defendant's decision to divide the Roswell to Ruidoso Downs highway project into two segments, the plateau and valley segments, for purposes of environmental analysis, violates NEPA. Plaintiffs contend that only a superficial environmental analysis was performed for the 17 mile plateau segment. They protest the fact that Defendant commenced work on the plateau segment without having completed an environmental analysis of what they term the "entire project" – i.e., the 45 mile stretch of highway from Roswell to Ruidoso Downs. Plaintiffs argue that the FHWA had an obligation to study the impacts of the entire 45 mile stretch and an obligation to analyze less damaging alternatives to the "entire project", before it commenced construction of the plateau portion.

As a general rule under NEPA, segmentation of highway projects is improper for purposes of preparing environmental impact statements. *See Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 439 (5th Cir. 1981). The rule against segmentation was developed to insure that interrelated projects, the overall effect of which may be environmentally significant, not be artificially divided into smaller, less significant actions. *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 298 (D.C.Cir. 1987). Segmentation is illegal where it divides a project "into smaller parts, each which taken alone does not have a significant impact but which taken as a whole has cumulative significant impact ...." *Utah Shared Access Alliance v. Wagner*, 98 F.Supp.2d 1323, 1331 (D.Ut.2000).

The rule against segmentation is not required to be applied in every situation however. To determine the appropriate scope for an EIS, courts have considered four criteria in deciding whether a highway project has been illegally segmented: (1) whether the segment has logical termini: (2) whether it has substantial independent utility; (3) whether it forecloses the

5

opportunity to consider alternatives; and (4) whether it irretrievably commits federal funds for closely related projects. *See* 23 CFR Sec. 771.111(f).

**1. Logical termini**. An April 5, 2000 letter to Defendant Thomas from the New Mexico State Highway and Transportation Department[3] discusses that design team's determination that, for subsequent phases of the study, the Ruidoso to Roswell corridor should be divided into the two preliminary design projects, i.e., the valley and plateau projects. This letter explains factors it considered, noting important differences between the two sections. It noted that the Roswell to Riverside segment is located on a high, flat grassland plateau and that "it involves less complex terrain, crosses open range lands, and is in a relatively homogeneous biological setting." According to this letter, these geological characteristics differ greatly from those found in the valley section, which is in close proximity to the Rio Ruidoso and Rio Hondo and includes "areas of complex terrain, numerous access points, and sensitive social and environmental conditions that will require innovative engineering and highway design solutions." These differences were cited in this letter in connection with its reference to "rational end points for transportation improvements and review of environmental effects."

It is apparent to the Court that the end point for the plateau project was based upon a separation of two disparate areas, geologically speaking. There is nothing in the record to suggest that it is geographically illogical for the plateau segment to end where it does, i.e. at Milepost 302. Plaintiffs have not shown that Defendant's choice of an ending point for the plateau project is arbitrary or capricious.

---

[3] This letter is contained in the "Agency Correspondence" section of the appendix to the EA, Defendant's Exhibit 1.

**2. Substantial independent utility**. The proper inquiry here is whether one project will serve a significant purpose even if a second related project is not built. *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 299 (D.C.Cir. 1987)(finding independent utility in four-mile section of mass transit project originally planned as 18.6 miles); *Piedmont Heights Civic Club, Inc.,* 637 F.2d at 440-41 (urban highway projects, although related to overall transportation plan, individually contribute to improving traffic conditions).

The independent utility of this project was properly evaluated pursuant to NEPA, as reflected in numerous documents before the Court. The EA states that the plateau project is "needed to meet a legislative directive, enhance economic development potential in the project area, improve highway safety, extend the existing four-lane section west to Riverside, and ultimately provide ... system improvements from Ruidoso Downs to Portales." *Id*. at p. 1.3. These needs are discussed and considered in great detail in the EA at pp. 2.4-2.6. With the exception of the system improvements from Ruidoso Downs to Portales, there is no indication that any of these stated needs or purposes would not be met or achieved in the absence of a valley road project; these needs and purposes will be served whether or not the valley project is built.

Plaintiffs simply present no evidence that the two projects are dependent on one another. They make no factual showing that completion of the plateau project will trigger a four lane road through the valley. Plaintiffs do however rely on the September 1999 US70 Initial Corridor Study (Def's Ex. 2), and on a January 26, 2000 "US Highway 70 Newsletter for their argument that the 45 mile stretch was conceived of as a single and complete project and that it was later segmented to avoid the requirement of an EIS for the plateau segment.

I have reviewed these two exhibits and all evidence before the Court. Based on this

evidence, I am persuaded that these two projects were treated and considered together only for the limited purpose of determining if an alternative bypass route to the entire 45 mile stretch would be feasible.[4] I conclude that this is not proof that this 45 mile stretch was conceived of as one project, and later segmented to avoid environmental requirements. In fact, there is an absence of proof that any acts of Defendant suggest that it may have decided to treat the roads separately in order to avoid the requirements of federal law; this is a strong factor against a finding that the projects were illegally segmented. *See Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985 (6th Cir. 1989).

Plaintiffs have presented no evidence that the plateau project depends for its success on a project that may take place in the valley. *See Dickman v. City of Santa Fe*, 724 F.Supp 1341, 1346 (D.N.M. 1989). I conclude that Plaintiffs have not met their burden of showing a lack of independent significance and utility of these two projects.

**3. Foreclosure of the opportunity to consider alternatives.** Plaintiffs offer no proof as to this factor, only mere conjecture. They argue that a four lane road through the plateau section will necessitate four lanes in the valley because of "unstoppable momentum" or a "bureaucratic streamroller impossible to stop." There is no proof that the existence of one four-lane section in the plateau area mandates upgrading an adjacent two-lane road through the valley. There is simply no proof that the plateau project effectively commits decisionmakers to any future course

---

[4] The Initial Corridor Study, conducted in September 1999, investigated the feasibility of six potential route alternatives that would by-pass the Hondo Valley. In addition, it mentioned a "No-Build" alternative ("Alternative 1"), that would provide that the highway between Ruidoso Downs and Roswell would remain in its existing configuration. It also mentioned the making of improvements to the existing US70 alignment ("Alternative 2"). The six by-pass alternatives were ultimately eliminated and the existing corridor was selected, with Alternative 1 advanced for further consideration and as a benchmark to compare other alternatives, and Alternative 2 recommended for further consideration (Def's Ex. 2, Initial Corridor Study, pp. 11-21).

of action whatsoever in the valley.

As detailed above, numerous reasonable alternatives both outside and inside the corridor were evaluated in the Initial Corridor Study (Def's Ex. 2). This work was incorporated into the EA. (Def's Ex. 2, pp. 3.1-3.9). Inside the corridor, the EA contained an analysis of eight alternatives for improvements for the plateau project. This consideration satisfies the reasonable alternatives prong of the segmentation test.

**4. Irretrievable commitment of federal funds for closely related projects**. There is no evidence to support a finding that, if the plateau section is completed, that the FHWA is irretrievably committed to spend federal funds for road improvements in the valley.

Defendant Rueben S. Thomas is the principal FHWA official responsible for ensuring that New Mexico State Highway and Transportation Department (NMSHTD) projects funded with Federal-aid grants comply with all applicable Federal laws and regulations, including those on environment and planning (Decl. of R.S. Thomas, ¶ 4). As of October 29, 2001, $5,274,433.00 in Federal-aid highway funds has been obligated for the valley project, solely for consultant design work, including environmental studies and documentation, and advance acquisition of right-of-way (*Id.* at ¶ 11). There has been no authorization of Federal-aid highway funds for construction (*Id.*). An advance authorization of $25 million in Federal forest highway funds for construction of that part of the project through Lincoln National Forest was made, but was made contingent upon the completion of the environmental process and issuance of a Record of Decision by the FHWA. (*Id.*). This authorization in no way irretrievably commits Federal funds to construction of a valley project, but is contingent upon approval of the project by the FHWA. If approval of a project is not granted by the FHWA, the forest highway funds would be used on one or more of three other

9

forest highway projects specified in the authorization. (*Id*.)

Based upon my analysis of the four applicable segmentation criteria, I conclude that Plaintiffs have not established a likelihood of success on the merits of their claim that the FHWA violated applicable law in analyzing and segmenting the project (Count I). Furthermore, I find that the decision to separate the plateau and valley sections was not arbitrary, capricious or an abuse of discretion. 5 U.S.C. § 706(2)(A). Defendant's decision is entitled to a presumption of regularity, and this Court will not substitute its judgment for that of the agency. Nothing presented by Plaintiffs on this issue indicates a clear error in judgment.[5]

### B. Count II – Adequacy of the EA

When the environmental effects of a proposed action are uncertain, the agency must prepare an EA to determine whether a significant effect will result from the proposed action. *Catron County Bd. of Com'rs, New Mexico v. U.S. Fish and Wildlife Service*, 75 F.3d 1429, 1434 (10th Cir. 1996). Based on the EA, the agency either makes a finding of no significant impact, as it did in this case, or determines if there is a significant environmental impact, thus requiring preparation of an Environmental Impact Statement.

Plaintiffs allege that Defendant violated NEPA by relying upon an inadequate EA and issuing a FONSI on the plateau project. They argue that the two projects are related to each other closely enough to be, in effect, a single cause of action that shall be evaluated in a single impact statement. Under the definition of 40 CFR § 1508.25(a)(1), as discussed above in factors

---

[5] Counts III and IV allege that Defendant failed to comply with the National Historic Preservation Act, 16 U.S.C. § 470f, and Section 4(f) of the Department of Transportation Act, with respect to historic resources. It appears that these resources are located solely in the valley area, and are not in the plateau project area. Because these claims depend for their likelihood of success on Plaintiffs' claims of illegal segmentation, they also necessarily are not likely to succeed on the merits.

under the segmentation issue, these are not actions that are sufficiently connected to require a single impact statement.

Plaintiffs further complain that two impacts[6] to the plateau were not sufficiently addressed in the environmental process. They allege that the cumulative impacts of other reasonably foreseeable projects were not considered, in particular the impact of the valley project. In fact, cumulative impacts of the plateau and valley, and other, projects were considered in the EA, at pages 4.13-4.15. NEPA requires nothing more. The Council on Environmental Quality ("CEQ") regulations that implement NEPA are directed at synergistic impacts caused by combining projects, not merely the combination of the kind of insignificant impacts already considered by the EA. *Coalition on Sensible Trans., Inc. v. Dole*, 826 F.2d 60, 70, n.9 (D.C. Cir. 1987). Finally, as I noted at the hearing in this matter, it is acceptable to consider these types of impacts at the time a second, related project is approved. *Id*. at 71. Assuming that a decision to proceed with some form of a valley project is made, a determination of its contribution to cumulative impacts can be made at that time.

Secondly, Plaintiffs contend that the visual impacts on the surrounding environment were not considered. This argument is belied by the EA, at page 4.11, which shows that these impacts were considered. The same is true as to the effects on wildlife, which were considered and determined to be insignificant (Def's Ex. 1, pp. 4.8-4.9).

In sum, Plaintiffs have not shown that potential impacts were not adequately evaluated in

---

[6] Originally, Plaintiffs raised a third complaint insofar as the consideration of potential impacts was concerned. Defendant concedes that the EA was inadequate with respect to the Border Hills Structural Zone National Natural Landmark. Upon discovery of the landmark, Defendant immediately began the consultation process with the National Park Service, and apparently this issue is now moot. (*See* Decl. of G.D. Rawlings, Def's Ex. 9, ¶ 7).

the EA. Defendant's decision to issue an EA/FONSI, and not an EIS, because of the lack of significant impacts caused by the project was not arbitrary and capricious, nor was it a clear error in judgment.

**IV.  Other Elements Considered in Injunctive Relief Analysis**

Defendants correctly note that Plaintiffs have given short shrift to the other three injunctive relief elements. Plaintiffs' factually unsupported irreparable harm argument is that the plateau project will cause an "unstoppable momentum" that will make the valley project "inevitable" (Plts' Mem. Brief at 29).[7] Plaintiffs' prevalent concern of harm in this lawsuit is that the road through the Hondo Valley will be widened. This is a premature issue, and not relevant to the lawsuit at hand.

As to the second element, the only colorable potential injury to Plaintiffs is that to the visual resources enjoyed by association members. This was determined in the EA to be minimal. On the other hand, an injunction halting construction would adversely affect NMSHTD, resulting in thousands of dollars in administrative costs. (Decl. of Luis Alba). The threatened injury to Plaintiffs does not outweigh the potential damage to Defendant, if this Court were to grant injunctive relief.

Finally, Plaintiffs have not shown that the public interest favors the granting of an injunction. Plaintiffs have expressed opposition to Defendant's means of achieving the stated

---

[7] The Commission contends that it will suffer four specific harms if the plateau project proceeds. These harms largely have either been rectified (i.e., the Border Hills Structure National Natural Landmark issue), or relate to the valley area. The Commission's alleged concerns of harm to wildlife and vegetation were addressed in the EA, and found to be insignificant.

12

purposes of the plateau project, however they have not established that the public interest favors a halt to the construction of the plateau project.

In conclusion, Plaintiffs, as movants, have not carried their burden of persuasion as to any one of the four factors that are prerequisite to the granting of a preliminary injunction. Plaintiffs' briefs are replete with argument that the current construction of the plateau project "will make the continuance of the more contentious four-lane highway through the Hondo Valley segment inevitable." (*See* M. Torrez Aff. at ¶ 12). Plaintiffs may seek a day in court on the issue of whatever decisions are ultimately made regarding the road through the Hondo Valley. That day is not yet here.

**WHEREFORE,** Plaintiffs' Motion for Preliminary Injunction (Docket No. 11) and the Motion on Behalf of the Valley Community Preservation Commission for Preliminary Injunction (Docket No. 16) are hereby **denied**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**